THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
CIVIL CASE NO. 2:12-cv-000064-MR

| | |
|---|---|
| MELISSA JADICK and RICHARD H. JADICK, ) ) ) Plaintiffs, ) ) vs. ) ) ) BRANCH BANKING AND TRUST CO., ) ) Defendant. ) _____ ) | **O R D E R** |

**THIS MATTER** is before the Court on the Defendant's Motion to Dismiss [Doc. 5].

**I.   RELEVANT BACKGROUND**

In this action, the Plaintiffs Melissa Jadick ("Ms. Jadick") and Richard H. Jadick ("Dr. Jadick") allege that the Defendant Branch Banking and Trust Co. ("Bank") engaged in a scheme to cause potential real estate buyers to obtain loans from the Bank in order to purchase lots in the River Rock subdivision. [Complaint, Doc. 1 at ¶¶1, 6]. The Plaintiffs allege that they were impacted by this scheme when, in April and May of 2006, an employee of the Bank, Dawn Carter, made certain misrepresentations to

them. [Id. at ¶¶54-68]. The Plaintiffs also allege that in May and June of 2006 another employee of the Bank, Jim Talton, made further representations to them. [Id. at ¶¶69-72].

On or about June 16, 2006, the Plaintiffs entered into a Real Estate Purchase Agreement ("Purchase Agreement") with the developer, Legasus of North Carolina, LLC ("Legasus"), to purchase Lot 7A in Phase 1 of River Rock. [See Purchase Agreement, Doc. 6-1; Warranty Deed, Doc. 6-2].[1] On or about July 7, 2006, the Plaintiffs obtained a loan from the Bank. At that time, Dr. Jadick executed a Retail Note and Security Agreement ("Note") in favor of the Bank and the Plaintiffs signed a Deed of Trust securing the Note. [See Note, Doc. 4-1, and Deed of Trust, Doc. 4-2]. Approximately three years later, on or about June 26, 2009, Dr. Jadick executed a Retail Note Modification Agreement ("Modification Note"). [Modification Note, Doc. 4-3]. The Modification Note expressly states as follows:

> Borrower(s), any Guarantors of the Retail Note, and any Grantors, jointly and severally consent to the terms of this Agreement, waive any objection thereto, affirm any and all obligations to Bank and certify that there are no defenses or offsets against

---

[1] The Court may properly consider the exhibits referenced by the Bank in both its Answer and its Motion to Dismiss, as such exhibits are integral to and explicitly relied upon in the Plaintiffs' Complaint. See American Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004).

> said obligations or the Bank, including without limitation the Retail Note(s).

[Id. at 2].

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6), the Court is guided by the Supreme Court's instructions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). As the Fourth Circuit has noted, "those decisions require that complaints in civil actions be alleged with greater specificity than previously was required." Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012).

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

In reviewing the complaint, the Court must accept the truthfulness of all factual allegations but is not required to assume the truth of "bare legal

3

conclusions." Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." Walters, 684 F.3d at 439.

## III. DISCUSSION

The Bank now contends that the express language in the Modification Note bars the claims asserted the Plaintiffs in this case. [Doc. 6 at 3-4]. The Plaintiffs do not contest the fact that this waiver encompasses their claims, but rather contend that the waiver is unenforceable because it is contrary to law and public policy. [Doc. 11 at 16-17].

In North Carolina, courts will enforce an exculpatory contract "unless it violates a statute, is gained through inequality of bargaining power, or is contrary to a substantial public interest." Fortson v. McClellan, 131 N.C. App. 635, 636, 508 S.E.2d 549, 551 (1998); see also Sylva Shops Ltd. P'ship v. Hibbard, 175 N.C. App. 423, 428, 623 S.E.2d 785, 790 (2006); Andrews v. Fitzgerald, 823 F.Supp. 356, 378 (M.D.N.C. 1993). "This principle arises out of 'the broad policy of the law which accords to contracting parties freedom to bind themselves as they see fit. . . .'" Hibbard, 175 N.C. App. at 428, 623 S.E.2d at 790 (quoting Hall v. Sinclair Refining Co., 242 N.C. 707, 709-10, 89 S.E.2d 396, 397-98 (N.C. 1955)).

None of these exceptions apply to the provision at issue in this case. The allegations in the Plaintiffs' Complaint do not support a finding of inequality in bargaining power that would warrant the Court nullifying the contract entered into between the parties. The Plaintiffs purchased an undeveloped lot with the intention of selling it for a profit prior to the expiration of the loan's term. The Plaintiffs were not forced to buy these lots as an investment, much less at any particular price, and could have chosen not to buy a lot at all. See Hibbard, 175 N.C. App. at 428, 623 S.E.2d at 790 (noting that lessees "were not forced to lease this particular space."). Further, nothing prevented the Plaintiffs from seeking the assistance of their own advisor to assist in valuing the property or making a decision whether to invest in a lot at River Rock. Andrews, 823 F.Supp. at 378 ("The investor-plaintiffs were free to have made other investment decisions or to have elected not to invest at all."). Moreover, under the facts of this case as alleged in the Complaint, financing the purchase of an undeveloped lot as a speculative investment property does not amount to the type of substantial public interest found by North Carolina courts to warrant the invalidation of an otherwise valid contractual provision. The contract between the Plaintiffs and the Bank simply does "not create a risk

of injury to the public or the rights of third parties." Hibbard, 175 N.C. App. at 429, 623 S.E.2d at 790.

As Magistrate Judge Howell aptly summarized in a similar case:

> This is not a case where if [the borrowers] refused to sign the documents in question they would lose their primary residence or be kicked out of their home. The waivers at issue were contained in documents associated with financing or re-financing the purchase of an undeveloped lot that [the borrowers] purchased with the intention of selling for a profit prior to the expiration of the loans' terms. [The borrowers] have not provided the Court with any legal authority suggesting that North Carolina courts would invalidate such a contract based on the public policy exception.

Synovus Bank v. Karp, 887 F.Supp.2d 677, 703 (W.D.N.C. 2012) (Howell, M.J.). For these reasons, the Court concludes the Plaintiffs are barred from asserting their claims against the Bank.

**O R D E R**

**IT IS, THEREFORE ORDERED** that the Defendant's Motion to Dismiss [Doc. 5] is **GRANTED**, and the Plaintiffs' claims against the Defendant are hereby **DISMISSED WITH PREJUDICE.** The case shall proceed with respect to the Defendant's counterclaims only.

**IT IS SO ORDERED.**   Signed: September 30, 2013

Martin Reidinger
United States District Judge